SHIVERS, Senior Judge,
dissenting.
I respectfully dissent and would reverse, finding that the facts of this case demonstrate that the claimant’s employment required greater exertion than he encountered in non-work conditions. At the time of his injury, claimant was working as a lead carpenter for the employer, Burklew Construction, on new construction at a residential development. Claimant’s duties as lead carpenter were to make sure the work under his direction was accomplished and that it was done in an orderly and proper manner. His supervisory position imposed these responsibilities in addition to the duties normally associated with carpentry, which he also performed.
The undisputed evidence is that claimant was working on the ground when someone on the roof called to him and that he injured his neck in looking up. At issue is whether claimant’s employment contributed to his injury.
The Supreme Court of Florida, speaking through Justice Overton, squarely addressed such a question in Leon County School Board v. Grimes, 548 So.2d 205 (Fla.1989). In that case, Thelma Grimes was employed by the Leon County School Board
... as a media technician. The school board knew that she had been afflicted with polio as a youth and thus was required to wear a full-length brace on her right leg. The brace contained a lock which she had to fasten manually each time she stood up. On one occasion while at work, Grimes rose from her desk to reach a file and locked her brace in the usual fashion; however, the brace gave way, causing her to fall and fracture her left ankle. Her left leg was trapped beneath her as she fell on the carpeted floor. It is for the ankle injury that Grimes seeks workers’ compensation benefits. It should be noted that evidence was presented that her leg brace had previously given way while she was at home.
[[Image here]]
The central issue in this case concerns injuries which occur at the place of employment but are the result of a condition personal to the claimant and are not caused by the place of employment....
548 So.2d at 206 & 207 (emphasis added). Justice Overton, in concluding that the injury was not caused by Grimes employment, wrote:
In the instant case, Grimes fell and suffered the injuries solely as a result of her personal condition. The record supports the deputy commissioner’s finding that her employment in no way contributed to her injury.... As previously noted, her brace had given way in a similar fashion ivhile she was at home. We find the deputy commissioner had substantial, competent evidence to find that Grimes’ employment did not require her to exert herself any more at work than she did while not at work and that her employment conditions did not contribute to her injury.
548 So.2d at 208 (emphasis added).
In contrast to the claimant in Grimes, as a lead carpenter, Acker was required to exert himself more at work than he did while not at work. His employment conditions logically contributed to his injury. Over and above his normal carpentry work, his position required him frequently and continually to re *1215 spond to his fellow workers, both on the ground and on the roof. Claimant was asked (and his answers are not contradicted) about the communication requirements of the job:
Q. Is it unusual for someone or someone on the roof to call someone on the ground?
A. That happens all the time. Every day someone’s calling you. Every minute.
Q. What reasons would someone on the roof have to call someone on the ground?
A. Pass them materials or tell them how to do this. Basically passing up materials and answering questions.
Moreover, the evidence shows that, in spite of his preexisting arthritic condition, Acker had never before experienced any injurious results from the ordinary activities of life.
Q. Mr. Acker, had you ever experienced any injurious results, that is, injury to your neck, from changing a light bulb, talking to your wife or looking up to someone in a restaurant?
A. No, I haven’t.
Q. When you performed those activities throughout your life had you ever heard the same type of pop or snap that you heard on April 21st, 1992?
A. No, I never had anything like that happen.
The facts presented in the instant case are analogous to those in Cheney v. F.E.C. News Distribution Co., 382 So.2d 1291 (Fla. 1st DCA 1980), in which we were concerned with a claimant who, prior to his industrial accident, had been involved in a nonwork-related automobile accident which caused him to suffer a hematoma, cerebral concussion and amnesia. Following the automobile accident, claimant had recurrent symptoms of headaches and dizziness. We reversed a finding of non-compensability in that case, noting that while it is true that the condition which caused appellant’s dizziness did not arise from his job, the activity demanded by his work increased the chances of his becoming dizzy. In that case, the claimant’s duties required him to carry magazines, put them on the floor, then on a rack, and take others off a rack. These activities required the claimant to bend, twist and turn to accomplish his job. We reasoned that, when at home, the claimant could control the amount of twisting, turning and bending that he did. He could not be so deliberate in his movements at work. We found that the employment activity did contribute to the injury and that it was less likely the claimant would have fallen at home where he could have better and more selectively controlled his positional changes. On these facts, we held in Cheney that claimant suffered an accident and injury arising out of and in the scope of his employment. 382 So.2d at 1293; See also Lovett v. Gore Newspapers Co., 419 So.2d 306 (Fla.1982) and AG. Carriers, Inc. v. Carroll, 496 So.2d 953 (Fla. 1st DCA 1986).
Claimant Acker had never before experienced injurious results from looking up in his nonwork-related activities. In his employment as lead carpenter with Burklew Construction he was responsible not only for his own carpentry assignments but also was required to respond “every minute” to his fellow workers’ questions for guidance and instruction whether the questions came from the ground or on the roof. It follows that his injury resulted from an exertion or strain beyond that which he normally encountered in his nonworking life, where his activity could be more selective and self-controlled. I would find that the record demonstrates a showing of increased risk or hazard attributable to the workplace.
I would reverse, therefore, finding that the claimant’s employment activities contributed to his injury and that he suffered an accident or injury arising out of and in the scope of his employment.